UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
 JANE DOE,

                                   Plaintiff,

                -against-

 239 PARK AVENUE SOUTH ASSOCIATES, LLC d/b/a
 BIG DADDY'S,
 BRANDED RESTAURANT FOODS LLC d/b/a
 BRANDED RESTAURANTS,
 BRANDED RESTAURANTS USA,
 BRANDED RESTAURANTS HOSPITALITY GROUP,
 DANIEL BENITEZ, individually,
 CHARLES ALLENBAUGH, individually,
 DEAN PALIN, individually,
 MICHAEL SCHATZBERG, individually, and
 JAMES a/k/a "JIMMY" FRISCHLING, individually,

                               Defendants.
-------------------------------------------------------------------------X

|  |  |
|---|---|
| | Civil Case No.: |
| | 1:21-cv-279 |
| | |
| | **COMPLAINT** |
| | |
| | Plaintiff Demands |
| | A Trial By Jury |

    Plaintiff, JANE DOE (hereinafter referred to as "DOE" and/or "Plaintiff"), by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants, 239 PARK AVENUE SOUTH ASSOCIATES, LLC d/b/a BIG DADDY'S, BRANDED RESTAURANT FOODS LLC d/b/a BRANDED RESTAURANTS, BRANDED RESTAURANTS USA, BRANDED RESTAURANTS HOSPITALITY GROUP, DANIEL BENITEZ, individually, CHARLES ALLENBAUGH, individually, DEAN PALIN, individually, MICHAEL SCHATZBERG, individually, and JAMES a/k/a "JIMMY" FRISCHLING, individually (hereinafter collectively referred to as "Defendants"), upon information and belief, as follows:

## NATURE OF CASE

1.  Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the Administrative Code of the City of New York and

the laws of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, sex/gender discrimination, sexual harassment, hostile work environment, retaliation, and wrongful termination by Defendants.

## **JURISDICTION AND VENUE**

2.  Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

3.  Additionally, this Court has supplemental jurisdiction under the State law causes of action asserted in this action.

4.  On or about March 25, 2020, Plaintiff submitted a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC").

5.  On or about October 14, 2020, Plaintiff received a Right to Sue Letter from the EEOC.

6.  Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

7.  Venue is proper in this District based upon the fact that the events or omissions that give rise to the claims asserted herein occurred within the Southern District of New York.

## **PARTIES**

8.  Plaintiff JANE DOE is seeking damages to redress injuries suffered as a result of being discriminated against by her employer, inter alia, on the basis of her sex/gender, together with being subjected to sexual harassment, a hostile work environment, and retaliation.

9.  Plaintiff is an individual woman who is a resident of the State of New York, County of the Bronx.

10. At all times material, Defendant 239 PARK AVENUE SOUTH ASSOCIATES, LLC d/b/a BIG DADDY'S (hereinafter referred to as "BIG DADDY'S") is a domestic limited liability company duly existing by the virtues and laws of the State of New York that does business in the State of New York.

11. At all times material, Defendants BRANDED RESTAURANT FOODS LLC d/b/a BRANDED RESTAURANTS, BRANDED RESTAURANTS USA, and BRANDED RESTAURANTS HOSPITALITY GROUP (hereinafter collectively referred to as "BRF") are domestic limited liability companies duly existing by the virtues and laws of the State of New York that do business in the State of New York.

12. At all times material, Defendants BIG DADDY'S and BRF (hereinafter collectively referred to as "Defendants") own and operate several restaurants within New York City, including "BIG DADDY'S," located at 239 Park Avenue South, New York, NY 10003.

13. At all times material, Defendants employed Plaintiff as a hostess/bartender. BIG DADDY'S serves food and alcohol.

14. At all times material, Defendants employed CHARLES ALLENBAUGH (hereinafter referred to as "ALLENBAUGH") as a Manager at BIG DADDY'S located at 239 Park Avenue South, New York, NY 10003

15. At all times material, ALLENBAUGH held supervisory authority over Plaintiff with regard to her employment, controlling many tangible aspects of Plaintiff's job duties, including the power to hire and fire Plaintiff.

16. At all times material, Defendants employed DANIEL BENITEZ (hereinafter referred to as "BENITEZ") as a server.

17. At all times material, BENITEZ held managerial responsibility over Plaintiff with regard to her employment, controlling many tangible aspects of Plaintiff's job duties.

18. At all times material, DEAN PALIN (hereinafter referred to as "PALIN") was and is an

owner, creator, and managing member of Defendants BIG DADDY'S and BRF including the BIG DADDY'S located at 239 Park Avenue South, New York, NY 10003.

19. At all times material, Defendant PALIN held supervisory authority over Plaintiff with regard to her employment, controlling many tangible aspects of Plaintiff's job duties, including the power to hire and fire Plaintiff.

20. At all times material, MICHAEL SCHATZBERG (hereinafter referred to as "SCHATZBERG") was and is the Managing Director (as well as creator and managing member) of Defendants BIG DADDY'S and BRF including the BIG DADDY'S located at 239 Park Avenue South, New York, NY 10003.

21. At all times material, Defendant SCHATZBERG held supervisory authority over Plaintiff with regard to her employment, controlling many tangible aspects of Plaintiff's job duties, including the power to hire and fire Plaintiff.

22. At all times material, JAMES a/k/a "JIMMY FRISCHLING (hereinafter referred to as "FRISCHLING") was and is a creator and managing member of Defendants BIG DADDY'S and BRF including the BIG DADDY'S located at 239 Park Avenue South, New York, NY 10003.

23. At all times material, Defendant FRISCHLING held supervisory authority over Plaintiff with regard to her employment, controlling many tangible aspects of Plaintiff's job duties, including the power to hire and fire Plaintiff.

## FACTUAL ALLEGATIONS

24. In or around October 2019, Defendants hired Plaintiff as a hostess/bartender.

25. At the time Defendants hired Plaintiff, Plaintiff was in a relationship with a man for approximately three (3) years.

26. Throughout the course of Plaintiff's employment with Defendants, Defendants discriminated against Plaintiff on the basis of her sex/gender, and subjected Plaintiff to a

hostile work environment on the basis of her sex/gender.

27. By way of example only, in or around December 2019, a dishwasher, MARGARITO (last name unknown) ("MARGARITO"), began to 'catcall' Plaintiff. MARGARITO called Plaintiff, "beautiful," "chiquita," and "mi amor."

28. On one occasion, in or around January 2019, Plaintiff went downstairs to gather a bin of supplies. MARGARITO crept behind Plaintiff and whispered, "Mi amor, give me a kiss." Plaintiff was stunned and responded, "Back the fuck off!" MARGARITO backed away from Plaintiff and went back upstairs.

29. Shortly thereafter, Plaintiff complained to Defendant ALLENBAUGH. Defendant ALLENBAUGH appeared annoyed by Plaintiff's complaint.

30. In addition to the aforementioned discriminatory behavior, Defendants knowingly permitted Defendant BENITEZ to sexually harass and assault Plaintiff.

31. Defendant BENITEZ exhibited a pattern and practice of making unwelcome sexual advances toward Defendants female employees, including Plaintiff.

32. In or around Fall 2019, Plaintiff became friendly with several of her colleagues, including BENITEZ.

33. In or around late January 2020, Plaintiff noticed that BENITEZ was becoming increasingly flirtatious in their communications. Despite her better judgment, Plaintiff engaged in flirtatious behavior with BENITEZ.

34. Notably, at this time Defendant BENITEZ was also in a relationship with a woman for approximately five (5) years.

35. However, after approximately two (2) weeks of communication with BENITEZ, in or around February 2020, Plaintiff texted BENITEZ informing him that she no longer wished to engage in this behavior with BENITEZ.

36. Plaintiff apologized and explained that she wanted to remain in her relationship of three (3)

years. Defendant BENITEZ responded, "I understand."

37. Shortly thereafter, Defendant BENITEZ exhibited a pattern and practice of inappropriate, unwelcome, and aggressive sexual advances toward Plaintiff.

38. On or about February 22, 2020, Defendant BENITEZ and Plaintiff's shifts overlapped.

39. During the time that Plaintiff and BENITEZ were on the clock together, Plaintiff noticed that BENITEZ was emotionally disturbed.

40. Shortly after Plaintiff began her shift, BENITEZ' shift ended. Plaintiff was relieved, as she believed that Defendant BENITEZ would leave the restaurant after his shift.

41. At the conclusion of BENITEZ' shift, BENITEZ began to consume alcohol at the restaurant. At this time, Plaintiff was working at the hostess stand.

42. While working at the hostess stand, Defendant BENITEZ approached Plaintiff several times and asked to speak with her. In addition, BENITEZ demanded Plaintiff to sit and eat/drink with him.

43. Plaintiff observed that BENITEZ was intoxicated and instructed him to leave her alone, as she was working and his behavior was inappropriate.

44. Defendant BENITEZ refused to take 'no' for an answer and became visibly angered. BENITEZ became aggressive with Plaintiff and physically grabbed her hands and arms, pulling her toward a table. BENITEZ began using profanity and demanded Plaintiff to sit with him.

45. Defendant BENITEZ' unwelcome and boisterous behavior became readily apparent to guests of the restaurant, as well as Defendant ALLENBAUGH (Plaintiff's Manager).

46. Plaintiff was appalled that her supervisor – especially in the presence of guests – would permit such inappropriate and unlawful conduct. Plaintiff became anxious and the work environment turned hostile.

47. In an attempt to placate BENITEZ, Plaintiff briefly sat down with BENITEZ.

48. Plaintiff instructed BENITEZ that his behavior was inappropriate, and this was not the time or place to have this discussion as Plaintiff was still working and there were numerous guests in the immediate vicinity. Defendant BENITEZ ignored Plaintiff's pleas and mumbled, "So that's what you want to do. You don't care about me." Plaintiff saw that she was not getting through to BENITEZ and returned to her position at the hostess stand.

49. Despite Plaintiff's attempt to placate BENITEZ, BENITEZ escalated the nature and severity of his unwelcome sexual advances from unwelcome comments to unwelcome touching.

50. As a result of Defendant BENITEZ' unrelenting and escalating sexual advances, Plaintiff began to develop severe anxiety.

51. Shortly thereafter, Defendant BENITEZ went outside to smoke a cigarette. Defendant ALLENBAUGH happened to be taking a smoke break at the same time and the two began to have a conversation.

52. As Defendant ALLENBAUGH returned inside the restaurant, he informed Plaintiff that Defendant BENITEZ wanted to speak with her. Plaintiff informed ALLENBAUGH that BENITEZ was 'wasted,' and sexually harassing her. ALLENBAUGH shrugged his shoulders with nonchalant indifference and went back to work. Plaintiff briefly stepped outside and informed BENITEZ that he was seriously out of line, to stop touching her, and she had nothing to say to him.

53. Defendants discriminated against Plaintiff on the basis of her sex/gender.

54. Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender.

55. Defendants retaliated against Plaintiff for engaging in protected activity, by subjecting her to further acts of discrimination and sexual harassment.

56. In response to Plaintiff's explicit instruction for BENITEZ to refrain from touching Plaintiff, BENITEZ intentionally and purposefully began to touch Plaintiff more frequently.

57. In an effort to remove herself from this increasingly toxic situation, Plaintiff went to the ladies' room for a moment of peace.

58. As Plaintiff came out of the bathroom, she was startled to see BENITEZ waiting right outside of the door. Plaintiff was terrified and attempted to get away from BENITEZ. Plaintiff exclaimed, "Excuse me!" and tried to get around BENITEZ. BENITEZ physically positioned himself in front of Plaintiff so that she could not get around him. BENITEZ approached Plaintiff and whispered, "Where do you think you're going?" Plaintiff begged BENITEZ, "Just leave me alone!" and attempted to find ALLENBAUGH.

59. However, before Plaintiff could escape, Defendant BENITEZ forcibly grabbed Plaintiff's arm and dragged her down the stairs to the 'dry storage' area in the lower level of the restaurant. BENITEZ specifically brought Plaintiff to this area, as he knew there were no cameras.

60. Plaintiff yelled, "No! Stop!" but to no avail. Defendant BENITEZ successfully dragged Plaintiff into the dry storage area and violently shoved Plaintiff against the wall. BENITEZ cornered Plaintiff against the wall.

61. Plaintiff was overcome with a wave of anxiety and feared for her safety.

62. Defendant BENITEZ continued to push Plaintiff against the wall and attempted to forcibly kiss Plaintiff. BENITEZ violently grabbed Plaintiff by her face and neck.

63. Plaintiff attempted to push BENITEZ off of her and move toward the stairs, but BENITEZ quickly grabbed Plaintiff's hands and held them against the wall as he forcibly thrust his body onto Plaintiff's. Defendant BENITEZ pinned Plaintiff to the wall and attempted to keep her still as he said, "Stop lying. This is bullshit. You know you want this."

64. Plaintiff continued to struggle and attempt to break free of BENITEZ' grip. Defendant BENITEZ violently overpowered Plaintiff and pressed her arms harder against the wall. Plaintiff began to cry and whimpered, "NO! Please stop! This is wrong, be an adult!"

65. Again, Defendant BENITEZ forcibly attempted to kiss Plaintiff, pinning Plaintiff's hands to the wall. Plaintiff screamed for help, but BENITEZ became irate and tried to silence Plaintiff by covering her mouth. Defendant BENITEZ continued to violently restrain Plaintiff's arms. Plaintiff was terrified and felt BENITEZ was going to rape her.

66. Plaintiff stammered, "I don't want this. You need to understand that and leave me alone."

67. Defendant BENITEZ became emotional and released his forceful grip on Plaintiff.

68. Plaintiff frantically ran upstairs and searched for Defendant ALLENBAUGH.

69. To Plaintiff's relief, Defendant BENITEZ left the restaurant.

70. However, Plaintiff's relief was short-lived.

71. To Plaintiff's dismay, Plaintiff felt a surge of consternation as BENITEZ returned to the restaurant approximately one (1) hour later, even more intoxicated than when he left. Defendant BENITEZ returned with a female coworker, MANUELA RAMIREZ (hereinafter referred to as "RAMIREZ").

72. Defendant ALLENBAUGH watched as Defendant BENITEZ and RAMIREZ entered BIG DADDY'S, visibly intoxicated. ALLENBAUGH approached and BENITEZ asked if they could sit to dine/drink. Despite Defendant ALLENBAUGH's clear knowledge that BENITEZ was intoxicated, ALLENBAUGH permitted them to sit, and continued to serve BENITEZ alcohol.

73. Defendant ALLENBAUGH's conduct was willful, wanton, and reckless.

74. While seated at his table, Defendant BENITEZ continued to harass Plaintiff. As Plaintiff passed BENITEZ' table to seat guests, BENITEZ continued to grab Plaintiff's wrists and arms.

75. At this point, Plaintiff attempted to ignore Defendant BENITEZ' boorish and unwelcome conduct.

76. Defendants continued to serve BENITEZ alcohol, and witness BENITEZ become more

belligerent.

77. In fact, BENITEZ began following Plaintiff around the restaurant. BENITEZ was visibly angry with Plaintiff and continued to make unwelcome and aggressive physical contact with Plaintiff.

78. Defendant BENITEZ followed Plaintiff to the hostess stand and asked Plaintiff to speak with him privately. Plaintiff ignored BENITEZ. BENITEZ forcibly placed his arms around Plaintiff, grabbed Plaintiff's buttocks and waist, and tried to kiss Plaintiff. This was in front of customers, as well as ALLENBAUGH. Plaintiff informed BENITEZ, "Get away from me. You're not being professional and Charles [ALLENBAUGH] is right there. I'm working. PLEASE STOP." BENITEZ responded, "I don't care."

79. Despite Plaintiff's frantic cry for help, Defendant ALLENBAUGH failed to take any reasonable or immediate action to address Plaintiff's complaint of sexual harassment.

80. Defendants discriminated against Plaintiff on the basis of her sex/gender.

81. Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender.

82. Defendants retaliated against Plaintiff for engaging in protected activity, by subjecting her to further acts of discrimination and sexual harassment.

83. Numerous customers noticed BENITEZ' egregious and unwelcome conduct and asked Plaintiff, "Are you ok? Is he bothering you?"

84. Defendant ALLENBAUGH approached Plaintiff and said, "I don't know what is going on here, but you need to be more professional."

85. Plaintiff was stunned that Defendant ALLENBAUGH had the audacity to say that she was unprofessional, despite him witnessing BENITEZ' unrelenting onslaught of unwelcome sexual advances and aggressive behavior toward Plaintiff.

86. Plaintiff informed ALLENBAUGH, "Give me two minutes to speak with him. Hopefully I can get it through to him that he has to leave."

87. Again, Defendant ALLENBAUGH failed to take any reasonable or immediate action to address Plaintiff's complaint of sexual harassment. ALLENBAUGH was well aware of the situation, but at no point did he even attempt to intervene on Plaintiff's behalf and speak with BENITEZ.

88. RAMIREZ witnessed Defendant BENITEZ' behavior and ALLENBAUGH's complete failure to take corrective action. As a result, RAMIREZ spoke to Plaintiff and said, "Let's do this together, I'll be right there with you as your witness."

89. RAMIREZ gathered Defendant BENITEZ and Plaintiff and suggested they go downstairs, away from customers. As RAMIREZ, BENITEZ, and Plaintiff reached the bottom of the stairs, RAMIREZ said, "I'm going to give you two minutes to figure this out, and I'll be right here."

90. Defendant BENITEZ saw his opportunity to separate Plaintiff and instructed RAMIREZ "No, I want some privacy. Wait around the corner." Before Plaintiff could protest, Defendant BENITEZ grabbed Plaintiff's arm and pulled her further down the hallway toward the dry storage area. BENITEZ forcibly kissed Plaintiff, and grabbed Plaintiff's buttocks. Plaintiff cried BENITEZ, "Please stop. I don't want you to do this!" Again, Defendant BENITEZ violently pressed Plaintiff's arms against the wall and stated, "No. You're lying to me. You want this." BENITEZ grabbed Plaintiff around her neck and pinned her head against the wall. Plaintiff started to turn red and whimpered, "You're hurting me. STOP!"

91. Plaintiff continued to struggle with Defendant BENITEZ. RAMIREZ heard the commotion and came down the hallway. Upon seeing RAMIREZ, Plaintiff attempted to get away from BENITEZ. Defendant BENITEZ saw Plaintiff move to escape and slammed her back against the wall. RAMIREZ yelled at BENITEZ, "YOU NEED TO LEAVE, NOW. LEAVE HER ALONE."

92. Plaintiff cried, "Please help me! Get him off of me!" Even in front of RAMIREZ, Defendant BENITEZ continued to hold Plaintiff's arms and attempt to kiss her face and neck. Plaintiff's arms, neck, and face, were red from Defendant BENITEZ violently squeezing and groping her.

93. RAMIREZ attempted to physically restrain Defendant BENITEZ and get him to release his violent grip on Plaintiff. Defendant BENITEZ was belligerently intoxicated and began knocking items off of the shelf onto RAMIREZ. Plaintiff was hysterically crying and stated, "LOOK AT ME. You're scaring me, making me cry. What's wrong with you?" BENITEZ physically shoved RAMIREZ away from him and threw Plaintiff into the wall.

94. After several minutes struggling with Defendant BENITEZ, Defendants' employee, JONATHAN (last name unknown) (hereinafter referred to as "JONATHAN") walked down the stairs. JONATHAN saw BENITEZ violently restraining Plaintiff against the wall, as well as RAMIREZ struggling to deescalate the situation. Plaintiff yelled, "JONATHAN! PLEASE HELP!" Defendant BENITEZ stepped in front of Plaintiff to block her view of JONATHAN, but JONATHAN rushed over to help and yelled, "WHAT'S GOING ON HERE?"

95. Plaintiff was able to writhe free of BENITEZ' clutches and ran upstairs. Plaintiff was uncontrollably shaking and left deeply disturbed by BENITEZ's violent and aggressive sexual conduct.

96. Plaintiff informed Defendant ALLENBAUGH that BENITEZ had sexually harassed her and needed to leave/did not feel safe. ALLENBAUGH appeared angered by Plaintiff's complaint and told her, "GET OUT."

97. As a result of Defendants' failure to act, Plaintiff was subjected to violent sexual assault.

98. Due to Defendants blatant failure to act upon Plaintiff's complaint of sexual harassment – to her supervisor – Plaintiff was sexually assaulted while at her place of employment.

99. Defendants discriminated against Plaintiff on the basis of her sex/gender.

100.    Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender.

101.    Plaintiff was appalled, disturbed, and severely emotionally distressed by Defendant BENITEZ' egregious sexual assault.

102.    Plaintiff suffered, and continues to suffer, severe anxiety and depression as a result of being the victim of the aforementioned sexual assault.

103.    As a result, Plaintiff contacted the police and filed a police report against Defendant BENITEZ.

104.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

105.    As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress.

106.    Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

107.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

108.    Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

109.    Plaintiff claims that Defendants discriminated against and terminated Plaintiff because of her sex/gender, and because she complained or opposed the unlawful conduct of Defendants related to the above-protected class.

110.    Plaintiff claims constructive and/or actual discharge and also seeks reinstatement.

111.    Plaintiff claims alternatively (in the event Defendants claims so or that the Court

determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable

claims for the above conduct and facts under the applicable laws pertaining to Independent

Contractors.

112.    As Defendants conduct has been malicious, willful, outrageous, and conducted with

full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants,

jointly and severally.

113.    The above are just some of the examples of unlawful and discriminatory conduct to

which Defendants subjected Plaintiff.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION
### UNDER TITLE VII
### (AGAINST DEFENDANTS BIG DADDY'S AND BRF)

114.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

115.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a)

[Section 703] provides that it shall be an unlawful employment practice for an employer:

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges

of employment, because of such individual's race, color, religion, sex, or national

origin; . . ."

116.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C.

§2000e *et seq.*, by subjecting Plaintiff to discrimination on the basis of her sex/gender,

together with subjecting Plaintiff to sexual harassment, and causing a hostile work

environment based on the same.

117.    Plaintiff hereby makes a claim against Defendants under all of the applicable

paragraphs of Title VII.

118.     Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**TITLE VII**
**(AGAINST DEFENDANTS BIG DADDY'S AND BRF)**

119.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

120.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a)

provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any

practice made an unlawful employment practice by this subchapter, or because [s]he has

made a charge, testified, assisted or participated in any manner in an investigation,

proceeding, or hearing under this subchapter."

121.     Defendants engaged in unlawful employment practices prohibited by 42 U.S.C.

§2000e *et seq.,* by retaliating against Plaintiff with respect to the terms, conditions or

privileges of employment because of her opposition to the unlawful employment

practices of Defendants.

122.     Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**NEW YORK STATE LAW**
**(AGAINST ALL DEFENDANTS)**

123.     Plaintiff repeats, reiterates and realleges each and every allegation made in the

above paragraphs of this Complaint as if more fully set forth herein at length.

124. New York State Executive Law § 296 provides that,

"1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing

agency, because of the age, race, creed, color, national origin, sex, or disability, or

marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

125. Defendants violated the section cited herein by discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of her sex/gender together with subjecting Plaintiff to sexual harassment, and causing a hostile work environment based on the same.

126. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

127. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FOURTH CAUSE OF ACTION
FOR RETALIATION UNDER
NEW YORK STATE LAW
(AGAINST ALL DEFENDANTS)**

128.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

129. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article".

130. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff with respect to the terms, conditions or privileges of her employment because of her opposition to the unlawful employment practices of Defendants.

131. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FIFTH CAUSE OF ACTION**
**UNDER NEW YORK STATE LAW**
**AIDING AND ABETTING**
**(AGAINST ALL DEFENDANTS)**

132.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

133.    New York State Executive Law §296(6) further provides that "It shall be an unlawful

discriminatory practice for any person to aid, abet, abet, incite, compel or coerce the

doing of any of the acts forbidden under this article, or to attempt to do so."

134.    Defendants engaged in an unlawful discriminatory practice by aiding, abetting,

compelling and/or coercing the discriminatory behavior as stated herein.

135. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SIXTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

136.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

137.    The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an

unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof,

because of the actual or perceived age, race, creed, color, national origin, gender,

disability, marital status, sexual orientation or alienate or citizenship status of any person,

to refuse to hire or employ or to bar or to discharge from employment such person or to

discriminate against such person in compensation or in terms, conditions or privileges of

employment."

138.    Defendants engaged in an unlawful discriminatory practice in violation of New York

City Administrative Code Title 8, by creating and maintaining discriminatory working

conditions and a hostile work environment, and otherwise discriminating against the

Plaintiff because of Plaintiff's sex/gender together with subjecting Plaintiff to sexual harassment, and causing a hostile work environment based on the same.

139.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

140.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

141.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

142.    The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

143.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1) (e) by discriminating and retaliating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of his employer.

144.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

145.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

146.    The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce

the doing of any of the acts forbidden under this chapter, or attempt to do so."

147.  Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

148.  Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A NINTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE
(AGAINST ALL DEFENDANTS)**

149.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

150.  Section 8-107(19), entitled Interference with protected rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

151.  Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A TENTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE
(AGAINST ALL DEFENDANTS)**

152.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

153. Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this

section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

154. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AN ELEVENTH CAUSE OF ACTION**
**UNDER NEW YORK STATE LAW**
**NEGLIGENCE**
**(AGAINST ALL DEFENDANTS)**

155.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

156.     At all times material, Defendants BIG DADDY'S and BRF were negligent in the hiring, firing, retention and supervision of the subject harasser, Defendant BENITEZ.

157.     Defendants owed Plaintiff a duty to provide Plaintiff with a reasonably safe environment.

158.     Defendants breached their duties to Plaintiff and as a result Plaintiff was damaged in an amount to be determined at the time of trial.

**AS A TWELFTH CAUSE OF ACTION**
**UNDER NEW YORK STATE LAW**
**ASSAULT & BATTERY**
**(AGAINST DEFENDANT BENITEZ)**

159.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

160.    The aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of

the intent, carelessness and recklessness of Defendant BENITEZ, who did suddenly and

without provocation, physically assault and batter Plaintiff, herein causing Plaintiff to

sustain damages; in that Defendant BENITEZ did conduct himself in a wanton, willful,

reckless and heedless manner without regard to the safety of the Plaintiff herein; in that

said Defendant BENITEZ was physically abusive; in behaving in a disorderly manner; in

using unnecessary, excessive and unlawful touching against the Plaintiff; in willfully and

maliciously assaulting and battering the Plaintiff herein.

161.    As a result of Defendant BENITEZ' acts of assault and battery, Plaintiff has been

damaged in an amount to be determined at the time of trial.

### AS A THIRTEENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST DEFENDANT BENITEZ)

162.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

163.    Defendant BENITEZ' behavior was extreme and outrageous to such extent that the

action was atrocious and intolerable in a civilized society.

164.    Defendant BENITEZ' conduct was so outrageous in character and extreme in degree

as to go beyond all possible bounds of decency.

165.    Defendant caused Plaintiff to fear for Plaintiff's own safety.

166.    Defendants' breach of their duties to Plaintiff caused Plaintiff to suffer numerous

injuries as set forth herein.

167.    As a result of Defendants' acts, Plaintiff has been damaged in an amount to be

determined at the time of trial.

**AS A FOURTEENTH CAUSE OF ACTION**
**GENDER MOTIOVATED VIOLENCE PROTECTION ACT**
**(AGAINST DEFENDANT BENITEZ)**

168.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

169.     N.Y. ADC. LAW § 8-903 states in relevant part "For purposes of this chapter: a.

"Crime of violence" means an act or series of acts that would constitute a misdemeanor or

felony against the person as defined in state or federal law or that would constitute a

misdemeanor or felony against property as defined in state or federal law if the conduct

presents a serious risk of physical injury to another, whether or not those acts have

actually resulted in criminal charges, prosecution, or conviction. b. "Crime of violence

motivated by gender" means a crime of violence committed because of gender or on the

basis of gender, and due, at least in part, to an animus based on the victim's gender.

170.     N.Y. ADC. LAW § 8-904 : NY Code – Section 8-904: Civil Cause of Action states in

relevant part "Except as otherwise provided by law, any person claiming to be injured by

an individual who commits a crime of violence motivated by gender as defined in section

8-903 of this chapter, shall have a cause of action against such individual in any court of

competent jurisdiction for any or all of the following relief: 1. compensatory and punitive

damages; 2. injunctive and declaratory relief; 3. attorneys' fees and costs; 4. such other

relief as a court may deem appropriate."

171.     N.Y. ADC. LAW § 8-905 Limitations states in relevant part: "a. A civil action under

this chapter must be commenced within seven years after the alleged crime of violence

motivated by gender as defined in section 8-903 of this chapter occurred. . . . c. Nothing

in this section requires a prior criminal complaint, prosecution or conviction to establish

the elements of a cause of action under this chapter.

172.     Defendant BENITEZ' conduct constitutes crimes of "violence motivated by gender"

under The Victims of Gender-Motivated Violence Protection Act ("VGMVPA").

173.     As a result of Defendant's acts, Plaintiff has been damaged in an amount to be

determined at the time of trial.

## **JURY DEMAND**

 Plaintiff requests a jury trial on all issues to be tried.

 **WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally,

in an amount to be determined at the time of trial plus interest, punitive damages, attorneys'

fees, costs, and disbursements of action; and for such other relief as the Court deems just and

proper.


Dated:   January 12, 2021
         New York, New York

                                        DEREK SMITH LAW GROUP, PLLC
                                        *Attorneys for Plaintiff*


                                        /s/Zachary Holzberg_____
                                        Zack Holzberg, Esq.
                                        One Penn Plaza, Suite 4905
                                        New York, New York 10119
                                        212-587-0760